Kevin M. BEAN, Petitioner

v.

DEPARTMENT OF STATE, STATE
BOARD OF FUNERAL DI-
RECTORS, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 9, 2004.
Decided July 22, 2004.

James J. Kutz, Camp Hill, for petitioner.

Gerald S. Smith, Harrisburg, for respondent.

Kathleen K. Ryan, Harrisburg, for intervenor, PA Funeral Directors Association.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and COHN, Judge.

OPINION BY Judge PELLEGRINI.

Kevin M. Bean (Bean), a licensed funeral director, appeals from a decision and order of the Department of State, State Board of Funeral Directors (Board) that irrevocable pre-need agreements are subject to rescission at the request of a customer who has previously agreed to the terms of that agreement and are transferable to another funeral director.

At issue in this case are two pre-paid burial contracts or "pre-need agreement" forms as they are referred to herein which are used by Bean in his business. They allow a customer to purchase merchandise, services or other benefits that are rendered at the time of death. Both forms have been approved by the Board as required by the Board's regulations at 34 Pa.Code § 13.224 which provide that "prepaid burial contracts or preneed contracts to be used by a funeral director shall be reviewed and approved by the Board ..." One form clearly states that it is irrevocable and only allows the customer of Bean's services to cancel the transaction within three business days of signing the agreement. The other form, which was endorsed by SecurChoice, an affiliate of the Pennsylvania Funeral Directors Association, not only allows for the three-business day cancellation, but also gives the customer of Bean's services the option to revoke the agreement by checking a specified box marked "revocable."[1] If that box is checked, then the agreement may be terminated by either the buyer or the funeral home at any time prior to the customer's death. This does not mean that the customer can revoke the nature of the contract, i.e., the funeral or burial services, but he or she may transfer the services for another funeral director to carry out upon his or her death. If the "irrevocable" box is checked, the agreement cannot be termi-

---

1. The revocable form further provides that the agreement could be terminated by either the customer or the funeral home at any time prior to the beneficiary's death if any of the following conditions are met: "(1) You checked the "Revocable box" on the front of this agreement and; (2) You or the beneficiary move and reside outside the Commonwealth of Pennsylvania."

nated unless done so within the first three days after signing.

In 2002, Bean received a demand from a customer who wanted money returned that had been paid pursuant to an irrevocable agreement. Bean was aware of communications between the Board and a state representative regarding the licensing of another funeral director, the gist of the communications being that the Board believed that all pre-need funds belonged to the customer and not to the funeral director.[2] As a result of his dispute with the customer and the communications between the Board and the state representative, on January 10, 2003, Bean filed a petition for review in the nature of a declaratory judgment[3] action in this Court's original jurisdiction seeking a declaration that the Board could not interfere and direct that irrevocable pre-need agreements were subject to rescission at the request of the customer who had agreed to the terms of the agreement. In response, the Board filed preliminary objections alleging that this Court did not have original jurisdiction and that the case was not ripe for review as there was no case or controversy.

■ Because we had jurisdiction over the declaratory judgment action but believed that this was an area within the Board's expertise, with the agreement of the parties, we invoked the doctrine of primary jurisdiction and referred the primary legal question involved to the Board. As part of that order, we directed the Board to hold an administrative hearing for the purpose of addressing whether a customer could rescind an irrevocable pre-need agreement and to issue an adjudication within 30 days. More specifically, the order required the Board to address:

> Whether, under the current law, a pre-need customer may, for any reason, rescind an irrevocable pre-need agreement and demand the funeral director to forward the entire principal and the earnings to date to a subsequent funeral director for a pre-need contract with the subsequent director, even if the initial pre-need contract expressly provides that it shall be irrevocable and non-cancelable except for the three-day right-of-rescission provided for under the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–7?

2. More specifically, Thomas Blackburn (Blackburn), counsel to the Board, received an e-mail from the Honorable Michael K. Hanna, State Representative (Representative Hanna), who stated that a constituent funeral director had been approached by a potential client who had previously entered into a pre-need contract with another funeral director but now wanted to transfer the funds to the constituent funeral director and the originating funeral director refused to transfer the funds. Representative Hanna requested the Board's opinion regarding the refusal. Blackburn advised him that "the Board believes that all pre-need funds belong to the customer, and not to the funeral director, until the time of death and services are provided. Also, despite any contrary language ... [in] the contract, while the contract may be irrevocable as to the use of the funds, it is revocable as to which funeral director or funeral home is to provide services. According-

ly, a pre-need customer may rescind a pre-need contract and demand the funeral director to forward the entire principal and all earnings to date to a subsequent funeral home for a pre-need contract with that subsequent funeral director. With the exception of any reasonable arrangement fees which may not be finally collected until after the customer's death, a funeral director may not retain pre-need funds after the customer has rescinded the pre-need contract ..." Blackburn stated the Board's conclusions were based on Section 13(c) of the Funeral Director Law, Act of January 14, 1952, P.L. (1951), 1898, as amended, 63 P.S. § 479.13(c), and the Board's regulations at 49 Pa.Code § 13.224(a) and 13.226.

3. See the Declaratory Judgments Act, 42 Pa. C.S. §§ 7531–7541.

The Board held a timely hearing on the matter. Then, relying on Section 13(c) of the Funeral Director Law, 63 P.S. § 479.13(c), and its regulations found at 49 Pa.Code §§ 13.224(a) and 13.226, the Board concluded that a customer could rescind an irrevocable pre-need agreement reasoning that because a funeral director who entered into a pre-need contract with a customer and received funds in advance acted as a fiduciary or a trustee of the funds received, the funds remained the property of the consumer until the services were provided. It also reasoned that neither the Funeral Director Law nor the Board's regulations prohibited the transfer of those funds to another funeral director by the customer to provide those services. Bean then filed a petition for review with this Court appealing that determination and arguing that the Board erred in holding that a customer could rescind an irrevocable pre-need agreement. The Board, reneging on the agreement and representation it made to the Court, maintained that there was no controversy and this Court lacked subject matter jurisdiction to hear the matter. This appeal by Bean followed.[4]

## I.

■ Initially, we must address the Board's position that our order referring the matter to the Board was in error because no actual controversy existed, and the doctrine of primary jurisdiction remanding the matter to the Board for consideration was improperly invoked.

■ This matter originally came before the Court as a request for declaratory action[5] in which Bean alleged that there was a controversy because the Board had indicated to a state representative that the pre-need agreements were rescindable, and because Bean had been contacted by a client to rescind an irrevocable pre-need agreement which he believed was irrevocable under the contract which the Board had previously approved. Preliminary objections were filed and the Board agreed to an order by this Court that the matter be referred to the Board, which, by doing so, essentially conceded that there was a controversy to be resolved. By acquiescing to this Court's order to hold a hearing on the issue of the revocability of the pre-need agreement rather than appealing that order, the Board agreed that there was a controversy and waived the argument it now makes. Not only did the Board waive that argument, but by its letter to the state representative indicating that the irrevocable pre-need agreements were rescindable, it created doubt in an area that it was charged to administer, and neither funeral directors nor customers know how to conduct their affairs. All of this is confirmed by the adjudication it issued under the consent order.[6]

---

4. Our scope of review of the Board's decision is limited to determining whether constitutional rights have been violated, whether findings of fact are supported by substantial evidence and whether errors of law have been committed. *Firman v. Department of State, State Board of Medicine,* 697 A.2d 291 (Pa. Cmwlth.1997), *petition for allowance of appeal denied,* 550 Pa. 722, 706 A.2d 1215 (1998).

5. Declaratory relief may be granted for the purpose of affording relief from uncertainty and insecurity regarding legal rights, status

and other relations. *Faldowski v. Eighty Four Mining Co.,* 725 A.2d 843 (Pa.Cmwlth.1998).

6. If Bean had not returned the money, he could have been subject to discipline under Sections 11 and 17 of the Funeral Director Law, 63 P.S. §§ 479.11 and.479.17 (pertaining to suspension/revocation of license and penalties, respectively.) Although Bean has yet to be disciplined, the record is clear that Bean has already received at least one demand from a customer that money paid pursuant to an irrevocable pre-need agreement be returned and the same demand has been

As to the Board's argument that we improperly invoked the doctrine of "primary jurisdiction," "primary jurisdiction" is a judicially created doctrine that allows courts to make a workable allocation of business between themselves and agencies responsible for the regulation of certain industries, and arises where the original jurisdiction of the court is being invoked to decide the merits of the controversy. Rather than exercising its own jurisdiction, the Court declines jurisdiction because it is proper to defer to the administrative agency's jurisdiction. Primary jurisdiction is exclusive jurisdiction because the agency has jurisdiction over the cause of action to which a decision of the court is relevant, and the jurisdiction of the court will extend to the remaining issues and the relief to be granted. Jaffe, *Primary Jurisdiction,* 77 Harv. L.Rev. 1037 (1964).

Although the primary jurisdiction doctrine was originally a federal doctrine that was established by the United States Supreme Court in *Texas & Pac. Ry. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, (1907), our Supreme Court adopted it in *Weston v. Reading Co.,* 445 Pa. 182, 282 A.2d 714 (1971), and further explained it in *Elkin v. Bell Telephone of Pa.,* 491 Pa. 123, 132–133, 420 A.2d 371–376 (1980), as follows:

> The principles of the doctrine of primary jurisdiction are well settled. The United States Supreme Court "... recognized early in the development of administrative agencies that coordination between traditional judicial machinery and these agencies was necessary if consistent and coherent policy were to emerge. The doctrine of primary jurisdiction has become one of the key judicial switches through which this current has passed." The doctrine "... requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." (Citations omitted.)

Our Supreme Court went on to explain its effect, stating:

> It is equally important to realize what the doctrine is not—it is not simply a polite gesture of deference to the agency seeking an advisory opinion wherein the court is free to ignore the agency's determination. Rather, once the court properly refers a matter or a specific issue to the agency, that agency's determination is binding upon the court and the parties (subject, of course, to appellate review through normal channels), and is not subject to collateral attack in the pending court proceeding. "The common law doctrine of res judicata, including the subsidiary doctrine of collateral estoppel, is designed to prevent the relitigation by the same parties of the same claim or issues." K.C. Davis, Administrative Law, § 181.10 (1972). Once the administrative tribunal has determined the issues within its jurisdic-

---

made of another funeral director as evidenced by the inquiry of Representative Hanna. This Court has previously determined that:

> If differences between the parties concerned, as to their legal rights, have reached the state of antagonistic claims, which are being actively pressed on one side and opposed on the other, an actual controversy appears; where, however, the claims of the several parties in interest, while not having reached the active stage, are nevertheless present, and indicative of threatened litigation in the immediate future, which seems unavoidable, the ripening seeds of a controversy appear.

*Mid–Centre County Authority v. Boggs,* 34 Pa.Cmwlth. 494, 384 A.2d 1008, 1011 (1978). Because litigation for the return of the prepaid funds is a distinct possibility as the next logical step for dissatisfied customers, a controversy does, in fact, exist.

tion, then the temporarily suspended civil litigation may continue, guided in scope and direction by the nature and outcome of the agency determination. *Feingold v. Bell of Pennsylvania,* supra [477 Pa. 1] at 22, 383 A.2d [791] at 801 (1977) (Pomeroy, J., dissenting).

In *Poorbaugh v. Pennsylvania Public Utility Commission,* 666 A.2d 744 (Pa. Cmwlth.1995), *petition for allowance of appeal denied,* 544 Pa. 678, 678 A.2d 367 (1996), we further explained the doctrine as follows:

> Essentially, the doctrine creates a workable relationship between the courts and administrative agencies wherein, in appropriate circumstances, the courts can have the benefit of the agency's view on issues within the agency's competence. (Citations omitted.)
>
> The doctrine of primary jurisdiction requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme. (Citations omitted.) Our Supreme Court stated in *Elkin* that the doctrine serves several purposes, chief of which are the benefits to be derived by making use of the agency's special experience and expertise in complex areas with which judges and injuries have little familiarity. *Id.* Another important consideration is the need to promote consistency and uniformity in certain areas of administrative policy. *Id.* at 133, 420 A.2d at 376. Once the administrative tribunal has determined the issues within its jurisdiction, then the temporarily suspended civil litigation may continue, guided in scope and direction by the nature and outcome of the agency determination. *Elkin,* 491 Pa. at 133–34, 420 A.2d at 377.

*Id.,* 666 A.2d at 749. Therefore, when primary jurisdiction is conferred on an administrative agency, usually the following elements are present:

1. The industry is a heavily regulated industry;

2. To resolve the matter at issue requires a special expertise that resides within the agency;

3. The issue is fact specific and ordinarily requires voluminous and conflicting testimony to resolve it;

4. The administrative agency was created to address and focus on problems similar to the one for which its primary jurisdiction is being advanced;

5. It has jurisdiction to issue the relief requested;

6. Overriding all other factors, the regulatory system will work better if the administrative agency hears the matter rather than the courts.

Because the issue of the pre-need contracts was given to the Board to regulate and would better balance the interests involved, the doctrine of primary jurisdiction permitted this Court to send the matter to the Board for a determination on that specific issue. This Court's order requiring an administrative hearing *and* an adjudication gave the Board jurisdiction to hear the matter and now gives this Court jurisdiction to review the final adjudication of the Board. *See* Pa. R.A.P. 1551 (review of quasi-judicial orders shall be heard by the court on the record).

**II.**

■ As to the merits, whether the Board erred in finding that irrevocable pre-need agreements may be revoked by a customer at any time prior to death, Bean argues that determination is not supported by the Funeral Director Law or the Board's regulations. The Board argues that both the Funeral Director Law and its regulations create a trustee relationship

between the customer and the funeral director, thereby allowing the customer to terminate its relationship with the funeral director at any time regardless of whether the contract is "irrevocable."

The only section in the Funeral Director Law pertaining to pre-need agreements [7] is Section 13(c) which does not address whether irrevocable pre-need agreements may be rescinded. That section provides, in relevant part, the following:

No person other than a licensed funeral director shall, directly or indirectly, or through an agent, offer to or enter into a contract with a living person to render funeral services to such person when needed. If any such licensed funeral director shall accept any money for such contracts, he shall, forthwith, either deposit the same in an escrow account in, or transfer the same in trust *to a banking institution in this Commonwealth,* conditioned upon its withdrawal or disbursement *only for the purposes for which such money was accepted.* (Emphasis added.)

63 P.S. § 479.13(c). Similarly, nothing in the Board's regulations provide any direction or comment on pre-need agreements regarding rescission.

While the Board acknowledges that nothing in the Act or implementing regulations makes irrevocable pre-need agreements revocable, the Board argues that a trustee relationship allows for the rescission of an irrevocable agreement. It relies on the following regulations which it has issued which govern the sale and safeguard of funds for pre-arranged burial needs. 49 Pa.Code § 13.224, titled "Funding and reporting of prepaid burial contracts," provides in relevant part:

(a) A funeral director shall deposit in escrow or transfer in trust *to a banking institution in this Commonwealth,* the entire amount of monies received by the funeral director under a prepaid contract for funeral services or merchandise, including additional service fees or arrangement fees.

\* \* \*

(f) *Prepaid burial contracts or preneed contracts to be used by a funeral director shall be reviewed and approved by the Board and should reflect whether or not an additional service fee or arrangement fee is charged.* Prepaid burial contracts or preneed contracts used by a funeral director may not incorporate a contract for funeral merchandise entered into by a person or entity other than a funeral director. (Emphasis added.)

49 Pa.Code § 13.226, titled "Nature and description of escrow or trust accounts for prepaid burial contracts," provides the following:

(a) Funds received for prepaid burial contracts shall be placed in an escrow or trust fund account which shall be separate and distinct from the business and personal accounts of the funeral director.

(b) If funds received by a funeral director for preneed burial contracts are deposited in a banking account which bears interest, or are invested by the trustee bank and produce earnings, the interest or earnings shall be retained in the account with the principal and shall be held, accounted for and transferred in the same manner as the principal amount, to assure delivery of the same quality of service and merchandise for which the contract was made.

---

**7.** There is also a section addressing pre-need agreements relative to future interment, but that also does not address whether an irrevocable pre-need agreement may be rescinded at any time. *See* Section of 1 of the Funeral Director Law, 63 P.S. § 480.1.

(c) In the event of a sale or transfer of the business of a funeral director, prepaid burial contracts and prepaid burial accounts shall immediately be transferred to the control of the licensee who will assume responsibility for completion of the prepaid burial contracts. The licensee-transferee shall notify the Board in writing of the licensee's willingness to accept responsibility for completion of the prepaid burial contracts.

Contrary to the Board's argument, under the Board's regulations at 49 Pa.Code § 13.1, the pre-need agreements are defined as "a *contract* executed between a consumer and a licensed funeral director which provides that the funeral director will provide funeral merchandise and render services to the consumer upon the consumer's death." Because pre-need agreements are defined as contracts, contract principles apply. In *Empire Sanitary Landfill, Inc. v. Riverside School District*, 739 A.2d 651 (Pa.Cmwlth.1999), we stated that a contract had to be construed according to the meaning of its language, and:

> "The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties." *Sun Co., Inc. (R & M) v. Pennsylvania Turnpike Commission*, 708 A.2d 875, 878 (Pa. Cmwlth.1998). "The intention of the parties must be ascertained from the document itself, if its terms are clear and unambiguous." *Id.* The Court's inquiry should focus on what the agreement itself expressed and not on what the parties may have silently intended.

*Delaware County v. Delaware County Prison Employees Independent Union*, 552 Pa. 184, 713 A.2d 1135 (1998). "It is not proper, under the guise of construction, to alter the terms to which the parties, whether in wisdom or folly, expressly agreed." *Id.* at 190, 713 A.2d at 1138. The law assumes that the parties chose the language of their contract carefully. *Liazis v. Kosta, Inc.*, 421 Pa.Super. 502, 618 A.2d 450 (1992).

*Id.*, 739 A.2d at 654. While the Board contends that contract law[8] recognizes a distinction between a purely commercial contract and one for professional services, whereby the latter will not be specifically enforced, this argument ignores that the significant portion of the pre-need agreement is not for professional services but for the merchandise to be provided, i.e., a casket, urn, vault, etc. In this case, both the revocable and irrevocable pre-need agreements are unambiguous and, specifically, on the form endorsed by Secur-Choice, the customer is able to choose whether he or she wishes to enter into a revocable or irrevocable agreement by signing the appropriate box.

Even if we were to agree with the Board that trust laws apply, they would not apply in this case to create a trustee relationship between Bean and the customer. The regulations specify that the money given by the customer to Bean must be placed in escrow or trust in a *banking institution*, thereby making the banking institution the trustee, not Bean, and the trust is both for the benefit of Bean and the customer. Again, assuming that a trust existed, in *In re: Estate of Agostini*, 311 Pa.Super. 233, 457 A.2d 861 (1983), our Superior Court

---

**8.** The Board relies on Section 367 of the Restatement (Second) of Contracts which provides:

(1) A promise to render personal service will not be specifically enforced.

(2) A promise to render personal service exclusively for one employer will not be enforced by an injunction against serving another if its probable result will be to compel a performance involving personal relations the enforced continuance of which is undesirable or will be to leave the employee without other reasonable means of making a living.

held that where property of any kind is placed in the name of the donor or settler in trust for a named beneficiary, *unless a power of revocation is expressly or impliedly reserved,* the general principle of law is that such facts create a trust which is *prima facie irrevocable.* Therefore, a customer's funds for pre-need arrangements accepted in trust does not give the customer the right to rescind that agreement at any time.[9]

While we agree with the Board that by not allowing contracts to be revoked there would sometimes be serious problems created, i.e., if he or she dies in another location in Pennsylvania far away from where the first funeral director is located, not only is there is nothing in the Funeral Director Law or the implementing regulations that allows the Board to change irrevocable contracts to revocable ones when it has approved the contracts, but that is not a rationale for making all contracts revocable.[10] Consequently, the Board erred in determining that the Funeral Director Law and its regulations allow customers to rescind irrevocable pre-need agreements.

Accordingly, the decision of the Board is reversed.

### ORDER

AND NOW, this 22nd day of July, 2004, the order of the Department of State, State Board of Funeral Directors, dated May 7, 2003, is reversed.

### DISSENTING OPINION BY Judge SMITH–RIBNER.

I dissent from the decision of the majority to reverse the May 7, 2003 order issued by the State Board of Funeral Directors (Board), which declared that irrevocable pre-need agreements for the purchase of services required at the time of death were subject to rescission at the customer's request. The Board lacked subject matter jurisdiction to decide the question presented and to enter the order inasmuch as no case or controversy was presented that required a ruling. For this reason, the Board's order should be vacated and declared a nullity and the appeal filed by Kevin M. Bean, licensed funeral director, should be dismissed.

The record shows that in 2002 Bean received a demand from a customer that funds paid to him pursuant to an irrevocable pre-need agreement be returned to the customer. In addition, Bean became aware of a communication between the Board's Counsel and a Pennsylvania State Representative who made an inquiry to the Board on behalf of his brother, another licensed funeral director, concerning the transfer of pre-need funds. Counsel for the Board stated:

The Board believes that all pre-need funds belong to the customer, and not to the funeral director, until the time of death and services are provided. Also, despite any contrary language drafted in the contract by the funeral director, while the contract may be irrevocable as to the use of funds, it is revocable as to which funeral director or funeral home is to provide services. Accordingly, a pre-need customer may rescind a pre-need contract and demand the funeral director to forward the entire principal

---

**9.** Because a customer may not rescind an irrevocable pre-need agreement even if a trust is created, the Board's argument comparing the funeral director/customer relationship to a attorney/client relationship where the client can discharge an attorney at any time is nonpersuasive.

**10.** *See* Section 5 of the Funeral Director Law, 63 P.S. § 480.5, which allows for the revocation of a pre-need agreement if the customer moves out of state prior to his or her death.

and all earnings to date to a subsequent funeral director. With the exception of any reasonable arrangement fees which may not be finally collected until the customer's death, a funeral director may not retain pre-need funds after the customer has rescinded the pre-need contract.

(R.R. 632a.) In response to the above, the State Representative responded:

Tom, I've now had an opportunity to review the statute and the code. I don't see anything that expressly says that the trust must be transferable to another funeral home, other than in the case of the buyer moving out of state. Am I missing something?

In response Board counsel replied:

No, you are not missing anything. That conclusion is what the Board draws from the statute and the Board's regs.

(R.R. 631a.)

Bean thereafter filed his petition for review with this Court seeking declaratory relief, and the Board filed its preliminary objections asserting that (a) the Court did not have original jurisdiction to consider the petition because the Board has exclusive jurisdiction and because an adequate statutory remedy existed before the Board subject to appellate review; (b) the Court lacks jurisdiction since Counsel's letter was not an adjudication; and (c) under the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541, no actual case or controversy existed as Counsel's letter represented an advisory opinion. Following a hearing before a judge of the Court and an order directing the Board to determine whether a pre-need agreement may be rescinded, the Board issued its order stating that a customer may rescind an irrevocable pre-need agreement and direct the funeral director to forward all funds paid by the customer to another funeral director.

In ruling on the merits rather than dismissing this appeal, the majority overlooks well-settled law that declaratory relief may be granted only for purposes of affording relief from uncertainty and insecurity regarding legal rights, status and other relations. *Faldowski v. Eighty Four Mining Co.*, 725 A.2d 843 (Pa.Cmwlth.1998). Also a request for declaratory relief will be denied when the proceeding is within the exclusive jurisdiction of a tribunal other than a court. *Id.* Moreover, relief is unavailable under the Declaratory Judgments Act with respect to determining rights in anticipation of events that may never occur, *Silo v. Ridge*, 728 A.2d 394 (Pa.Cmwlth.1999), and a court may not prematurely entertain an administrative appeal when an adequate statutory remedy exists. *Jordan v. Fayette County Board of Assessment Appeals*, 782 A.2d 642 (Pa. Cmwlth.2001).

Bean seeks a declaration that the Funeral Director Law[1] (Law) and current regulations do not authorize the Board to discipline a funeral director who refuses to transfer consumer funds held in escrow for the benefit of a customer to another funeral director. As the Board points out, currently there are no pending disciplinary proceedings against Bean nor may such proceedings ever be filed. At oral argument, Board Counsel assured the Court that no disciplinary action would be instituted against Bean. Thus no basis existed for directing the Board to issue the order, and even if the Board did initiate disciplinary action it would be within the Board's exclusive jurisdiction to resolve, subject to appellate review.

Bean seeks declaratory relief because he has entered into irrevocable pre-need agreements with various customers, and the communication between Board Counsel and the State Representative indicated that Counsel viewed irrevocable agree-

1. Act of January 14, 1952, P.L. (1951) 1898, *as amended*, 63 P.S. §§ 479.1–479.20.

ments to be revocable to the extent that a customer could demand that funds held by one funeral director be forwarded to a different funeral director. Such circumstances, however, are not appropriate grounds for declaratory relief. *See Pennsylvania Turnpike Commission v. Hafer*, 142 Pa.Cmwlth. 502, 597 A.2d 754 (1991) (declaratory relief is appropriate only when there is imminent and inevitable litigation). Bean has entered into pre-need agreements for years without any disciplinary action having been filed against him, and litigation is not imminent or inevitable merely because Board Counsel responded to an inquiry and expressed his views regarding the revocability of pre-need agreements. Therefore, no case or controversy exists. Should a dispute arise as to the revocability of such agreements warranting disciplinary action, the matter would be within the Board's exclusive jurisdiction in accordance with Section 11(a) of the Law, 63 P.S. § 479.11(a).[2]

Based on well-established legal principles, I conclude that the Board's order should be vacated and declared a nullity and that Bean's appeal should be dismissed. The Board lacked subject matter jurisdiction to determine the question presented to it, and the Court lacked authority to direct the Board to issue the declaratory order.[3] Additionally, neither the Law nor the Declaratory Judgments Act authorizes the Board to issue advisory opinions. Because the Board lacked jurisdiction in the underlying claim, the majority erred in disposing of the merits of this appeal and in granting the requested declaratory relief. Therefore, I dissent.

Judge LEADBETTER joins in this dissenting opinion.

**2.** Section 11(a) of the Law provides that:

(a) The board, by a majority vote thereof, may refuse to grant, refuse to renew, suspend or revoke a license of any applicant or licensee, whether originally granted under this act or under any prior act, for the following reasons:

. . . .

(6) Violation of or non-compliance with the provisions of this act or the rules and regulations of the board.

**3.** I disagree with the majority's assertion that the doctrine of primary jurisdiction allowed the Court to remand this matter for the Board to determine the question presented, but more fundamentally I disagree that the Court's order requiring the Board to hold a hearing and to issue an adjudication "gave the Board jurisdiction to hear the matter and now gives this Court jurisdiction to review the final adjudication of the Board." Op. at 153. If the order requiring the Board to hold a hearing and to issue an adjudication is all that is *needed to confer jurisdiction on a tribunal*, then the majority essentially has determined that the doctrine has no meaning. In *Ostrov v. I.F.T., Inc.*, 402 Pa.Super. 87, 95, 586 A.2d

409, 413 (1991), the court explained that primary jurisdiction applies "where the administrative agency cannot provide a means of complete redress to the complaining party and yet the dispute involves issues that are clearly better resolved in the first instance by the administrative agency charged with regulating the subject matter of the dispute." However, for primary jurisdiction to apply, the agency must have subject matter jurisdiction in the first instance. *Id.* The Board here did not have subject matter jurisdiction to determine whether pre-need customers may rescind an irrevocable contract.

In his order requiring a hearing, the judge noted that "the parties hereby agree and the Court, therefore, orders the following. . . ." (R.R. at 1a.). The Board was then ordered to and did hold an administrative hearing to address the legal question involved. Bean contends that the Board cannot now complain about the procedure. However, to the extent that Bean claims the Board consented to its subject matter jurisdiction, I note that subject matter jurisdiction can never be waived. *City of Philadelphia v. White*, 727 A.2d 627 (Pa.Cmwlth.1999).