# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

New Garden Township,             :
             Appellant       :
                              :
        v.                :   No. 261 C.D. 2018
                              :   Argued: March 12, 2019
Artesian Resources Corporation, Inc.,  :
Artesian Water Pennsylvania, Inc.,     :
Artesian Water Company, Inc., and     :
Charles L. Wilkenson Broad Run      :
Valley, Inc.                       :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**          **FILED: May 14, 2019**

       New Garden Township (Township) appeals an order of the Court of Common Pleas of Chester County (trial court) that denied its post-trial motions following a non-jury verdict in favor of Artesian Resources Corporation, Inc. (Artesian Resources), Artesian Water Pennsylvania, Inc. (Artesian PA), Artesian Water Company, Inc. (AWC), Charles L. Wilkinson[1] (Landowner), and Broad Run Valley, Inc. (Broad Run Valley) (collectively, Appellees). The Township initiated this action by filing a declaratory judgment suit to determine its authority to enforce its local ordinances against Appellees, some of which are public utilities. On appeal, the Township asserts it has the right to enforce its ordinances on property in the Township where the property owners are private landowners and not public utilities,

---

[1] Although the caption refers to Appellee "Charles L. Wilkenson," the parties' briefs, the trial court opinion, and the trial court transcript refer to Appellee "Charles L. Wilkinson."

and the private landowners relied on a Certificate of Public Convenience (CPC) issued by the Pennsylvania Public Utility Commission (PUC) to an entity with no interest in the property. It also argues private landowners cannot claim exemption from the Township's ordinances as to work performed on their property where the CPC upon which they relied did not include the property at issue within its scope, and the PUC rejected the CPC holder's attempt to have the property included in the scope of its CPC. Upon review, we are concerned that the PUC possesses primary jurisdiction over a key issue in this case; thus, we vacate and remand to the court of original jurisdiction to make an inital determination whether to apply the doctrine of primary jurisdiction, thereby allowing the PUC to first resolve the essential issue of the scope and status of the CPC.

## I. Background

The trial court made the following findings. The Township is a second class township in Chester County. Artesian Resources is a Delaware Corporation and holding company. AWC is a Delaware corporation that is wholly owned by Artesian Resources. Artesian PA is a Pennsylvania corporation that is wholly owned by Artesian Resources.

Landowner owns properties in the Township, including tax parcel 60-6-7.2, which is comprised of approximately 5.5 acres. Broad Run Valley is a Pennsylvania corporation with its principal place of business in the Township; it owns tax parcel 6-5-167.1, which is comprised of approximately 49.9 acres. The two tax parcels are adjacent properties with frontage on Broad Run Road (collectively, the property).

2

In 2001, Broad Run Valley, Landowner, and Artesian Resources entered into an Easement Agreement (2001 Easement) to permit Artesian Resources access over properties owned by Broad Run Valley and Landowner. The 2001 Easement also granted Artesian Resources the right to access a well by travelling over the properties. The 2001 Easement states, in pertinent part:

> 12.4 <u>Assignment</u>. This Agreement shall be binding upon and inure to the benefit of the respective successors and assigns of the parties hereto. Neither party may transfer or assign this Agreement or its rights hereunder or delegate its performance hereunder without prior written consent of the other party, which consent will not be unreasonably withheld; provided, however, that <u>Artesian Resources has the right, without the approval of Grantor to consummate the transactions contemplated herein through the use of a subsidiary or other affiliate acquisition entity</u>.

Tr. Ct., Slip Op., 10/19/17, Finding of Fact (F.F.) No. 10 (quoting Ex. P-6 at ¶12.4 (emphasis in original).

In 2002, Broad Run Valley and Artesian Resources entered into an agreement, titled, Easement for Water Facilities (2002 Easement), which states, as relevant:

> 7. <u>Assignment</u>. This Agreement may be assigned or transferred by Artesian Resources without the prior approval of the Owner.

F.F. No. 11 (quoting Ex. P-7 at ¶7).

Artesian PA enjoys a CPC issued by the PUC to provide water service to 38 residences in the Township (service area) pursuant to the PUC's July 2002 order. In September 2002, Artesian PA filed with the PUC its affiliated interest

3

agreement with AWC, titled "Management Services and Operations Agreement." F.F. No. 13 (citing Ex. D-5). Approximately three months later, the PUC approved the Management Services and Operations Agreement. Artesian PA obtains water for its service area through an interconnection with the AWC system under the terms of the Management Services and Operations Agreement.

Pursuant to the Delaware River Basin Compact (Compact) entered into by the States of Delaware, New Jersey, New York, the Commonwealth of Pennsylvania, and the United States in 1961, and its regulations, the Delaware River Basin Commission (DRBC) has the power to allocate waters in excess of 100,000 gallons per day over a 30-day monthly average that can be withdrawn from wells in the Delaware River Basin.

In December 2015, the DRBC approved, subject to certain terms and conditions, an allocation of groundwater that could be withdrawn from the well on the property, subject to testing and other requirements. The DRBC's approval requires only that the "docket holder" obtain "all necessary permits and/or approvals from other State, Federal or local government agencies having jurisdiction over this project[.]" F.F. No. 18 (quoting Ex. D-7 at 20).

Pending before the PUC is Artesian PA's application for approval of the proposed assignment of the 2001 and 2002 Easements and related agreements from Artesian Resources to Artesian PA. Water from the well on the property, as the closest water source for Artesian PA's customers, will provide an important

4

means of ensuring safe and reliable water service to Artesian PA's customers in the service area.

In February 2016, Artesian PA entered into a contract with Austin & Bednash Construction, Inc. (Contractor) to install approximately 180 feet of eight-inch pipe (the main) near the well on the property to the edge of the right-of-way of Broad Run Road (the work). The work is only part of the planned work to complete connection of the well on the property to the facilities of Artesian PA and AWC. Contractor performed the work from February 20 and 21, 2016, and Artesian PA paid Contractor for the work. The work was intentionally designed and performed so that trenching for the pipe would be less than 3 feet in vertical depth and less than 1,000 square feet of earth would be disturbed. The main is neither connected to the well on the property nor to the system of Artesian PA or AWC, and it was capped at both ends since the work was completed.

Some Township residents observed the work as it was proceeding and contacted a Township Supervisor, prompting the Township Supervisor to visit the property. The Township Supervisor initially told Contractor to stop the work, but after a discussion with a principal of Contractor and others, the Township Supervisor told Contractor the work could proceed. Artesian PA installed and owns the main.

In February 2016, the Township Zoning Officer issued Broad Run Valley and Landowner a notice of violation. The notice of violation made no final determination about whether the work violated any Township ordinance.

In March 2016, the Township filed a declaratory judgment suit seeking declarations that: (1) Landowner, Broad Run Valley, Artesian Resources, and AWC are subject to the Township's zoning and lot alteration ordinances as to any and all work performed on the property; and (2) the CPC held by Artesian PA is not a basis on which to exempt its parent corporation, Artesian Resources, or Landowner, Broad Run Valley, or AWC, from the Township's zoning and lot alteration ordinances.

Appellees filed an answer with new matter and a counterclaim. Appellees' counterclaim sought a declaration that, under Pennsylvania law, the Township's zoning and other ordinances did not apply to Artesian PA's undertakings in connection with the well on the property. Appellees also sought injunctive relief to bar the Township from all attempts to regulate or interfere with the well and work related to the well and the interconnection with Artesian PA's facilities, so long as it was operated by a Pennsylvania public utility or an entity acting on behalf of a Pennsylvania public utility. The Township filed an answer to the counterclaim and a reply to new matter. The case proceeded to a non-jury trial.

After trial, the trial court issued a decision in which it made the following conclusions of law. It is well-settled that municipalities have no power to regulate or zone with respect to public utility facilities. The power to regulate such facilities rests exclusively with the PUC. Duquesne Light Co. v. Borough of Monroeville, 298 A.2d 252 (Pa. 1972); Duquesne Light Co. v. Upper St. Clair Twp., 105 A.2d 287 (Pa. 1954). The PUC is given this power because subjecting public utilities to a collection of local regulations would unnecessarily burden and potentially disable a public utility from its mission. S. Coventry Twp. v. Phila. Elec.

6

Co., 504 A.2d 368 (Pa. Cmwlth. 1986); see also Commonwealth v. Delaware & Hudson Ry. Co., 339 A.2d 155, 157 (Pa. Cmwlth. 1975) ("[P]ublic utilities are to be regulated exclusively by an agency of the Commonwealth with state-wide jurisdiction rather than by a myriad of local governments with different regulations."). Thus, municipalities lack power to regulate utility facilities. Newtown Twp. v. Phila. Elec. Co., 594 A.2d 834 (Pa. Cmwlth. 1991).

Before the trial court, the Township argued that the PUC had exclusive regulatory authority over a public utility only within the public utility's service territory as defined in its CPC. The trial court disagreed, observing no distinction between regulation inside or outside of a service territory. The trial court explained that the purpose of Pennsylvania's regulatory scheme would be thrown into disarray and public utilities would regularly be hauled into court if municipalities could gain regulatory jurisdiction simply by asserting, as the Township did here, that a public utility exceeded the scope of its CPC.

The Township also argued it could bypass the primacy of the PUC's authority to regulate public utilities by citing the property owner and not the utility for violations of its zoning ordinance. If that was the case, the trial court stated, the purpose of statewide regulation of utilities would easily be defeated each time a utility performed work with a property owner's permission that in some manner violated a municipality's zoning ordinance.

The Township further argued that the failure of Artesian Resources and Artesian PA to obtain the PUC's approval to transfer ownership rights in the 2001

7

and 2002 Easements prior to performing the work was critical. The Township asserted that, absent such approval, public utilities could not claim to be exempt from zoning ordinances. The trial court rejected these assertions based on our Supreme Court's decision in Duquesne Light Co. v. Upper St. Clair Township. There, the Court affirmed the primacy of the PUC's authority to regulate public utilities by holding that the township could not enforce its zoning law, stating, "[i]n the absence of a clear expression of intent on the part of the legislature to authorize a municipal subdivision by zoning ordinance to regulate a public utility, no such power can be implied." Id. at 293-94.

The trial court further explained that in Borough of Phoenixville v. Pennsylvania Public Utility Commission, 280 A.2d 471 (Pa. Cmwlth. 1971), this Court held that when a municipality renders uncertificated, extraterritorial water service, the PUC has authority to order extensions of the extraterritorial service *nunc pro tunc* as long as the ordered extensions are reasonable. Therefore, a public utility's actions taken prior to PUC approval do not bar a positive outcome for the public utility.

The trial court determined that the Township did not identify a clear expression of intent on the part of the legislature to authorize it to regulate public utilities, such as Artesian Resources, AWC, and Artesian PA, by zoning ordinance when engaged in the development of facilities. Because no such power can be implied, the trial court stated, it was incumbent on the Township to identify its authority and the Township did not do so.

8

The trial court further stated that the declarations sought by the parties in the complaint and counterclaim concerned matters that were properly before the PUC for determination. For these reasons, the trial court entered a decision in favor of Appellees and against the Township on the complaint.

The Township filed post-trial motions, which the trial court denied. The Township subsequently appealed to this Court, and the trial court directed it to file a concise statement of the errors complained of on appeal, which it did. The trial court then issued a brief opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) further explaining the basis for its decision. It stated:

> During the pendency of post-trial matters, on December 7, 2017, the [PUC] ruled on Artesian PA's appeal that had been pending before it. The litigants before us have vastly different interpretations of the meaning of the [PUC's] ruling; however, we have concluded that [Appellees] correctly set forth the meaning of this ruling. Accordingly, the issues raised by the Township in its post-trial motion that were based on the December 7, 2017 ruling were also rejected. <u>Proceedings before the [PUC] have not concluded and it is there that matters related to the well must be decided</u>. …

Tr. Ct., Slip Op., 3/13/18, at 1-2 (emphasis added).

## II. Issues

On appeal, the Township asserts it has the right to enforce its ordinances on property located in the Township where the property owners are private landowners and not public utilities, and the private landowners relied on a CPC issued to an entity with no interest in the property. It also argues private landowners cannot claim exemption from the Township's ordinances as to work performed on

9

their property where the CPC upon which they rely does not include the property at issue within its scope, and the PUC rejected the CPC holder's attempt to have the property included in the scope of its CPC.

### III. Discussion
### A. Contentions

Although the parties' briefs address several issues, importantly, they dispute the status of Artesian PA's application seeking PUC approval of the affiliated interest agreements between Artesian PA and its parent affiliate, Artesian Resources. The affiliated interest agreements are assignment agreements that assign from Artesian Resources to Artesian PA the 2001 and 2002 Easements regarding the well and its attendant facilities. Reproduced Record (R.R.) at 720a, 726a-27a.

On this issue, the Township argues, the trial court improperly relied on the fact that Artesian PA directed the work on the property that led to the notice of violation and in finding that, as a result, Artesian PA's status as a public utility extended immunity over Landowner and Broad Run Valley as to any violations. The Township asserts the undisputed evidence established Artesian PA owned no easement or other property rights to the property on February 20, 2016, when it purportedly directed the performance of the work. See R.R. at 67a, 68a-69a, 117a, 204a-52a, 253a-60a.

The Township further contends the evidence established that an assignment of the easement agreements between Artesian Resources, Landowner, and Broad Run Valley to Artesian PA was predicated on application and approval by the PUC, which was not obtained at the time of trial and was later specifically

10

rejected by the PUC.  See R.R. at 67a, 73a-75a, 81a, 261a-62a, 327a-444a.  Thus, the Township maintains, Artesian PA had no right to the property when the work was performed.

The Township further argues the trial court erred in failing to recognize Artesian PA's CPC did not and does not include the geographic territory where the work was performed.  R.R. at 66a-67a, 70a, 74a-75a, 115a, 261a-62a, 266a-319a, 327a-444a.  Indeed, the Township maintains, not only did the evidence establish the well and water main assets on the property were outside the geographic territory of Artesian PA's CPC, but, more importantly, the evidence established approval must first be obtained for Artesian PA to complete any work on the well and water main pursuant to Section 1102 of the Public Utility Code, 66 Pa. C.S. §1102.

The Township further argues that, after trial, in December 2017, the PUC rejected Artesian PA's request for approval of the assignment agreement.  Not only does this fact completely undermine Appellees' defense that approval of the affiliated services agreement was "pending," or that Appellees' request for approval of that agreement was forthcoming, the Township asserts, it establishes the territory where the well is located is not within the service area contemplated by Artesian PA's CPC.  Appellant's Br. at 17.  Indeed, the Township contends, the PUC condemned the Artesian Appellees' conduct in acting as if they were already granted the rights they seek.  See R.R. at 745a.  In fact, it maintains, the PUC actually referred the matter to its Bureau of Investigation and Enforcement.  R.R. at 746a.

11

The Township argues these facts establish that, at the time construction relating to the well began on the property, Artesian PA did not have PUC approval to render service beyond the territory defined in its CPC. Further, the Township asserts, in the PUC's view, Artesian PA has a specific territory within which it is permitted to perform work under its CPC and that territory does not include the area where the well is located. The Township asserts the fact that the PUC rejected Artesian PA's attempted assignment pursuant to Section 2102(a) of the Public Utility Code, 66 Pa. C.S. §2102(a), and classified the request as an application requiring Artesian PA to obtain a CPC pursuant to Section 1102 of the Public Utility Code, R.R. at 77a-78a, 445a, undermines the validity of Appellees' arguments, which the trial court accepted, that the issuance of a CPC provides the entity that receives a CPC *carte blanche* to perform work anywhere in the state.

The Township asserts it is beyond dispute that Artesian PA has no relationship to the property, and its claim that the PUC would approve its attempt to obtain an ownership interest in the property was incorrect. The Township contends the PUC's rejection of Artesian PA's attempt to transfer its property interests renders Artesian PA a legal stranger to this action. Thus, the Township maintains, if this Court does not reverse the trial court and issue an order granting the Township the relief it seeks, it would be condoning the very illegality the PUC recently condemned.

Appellees respond that the Township's position omits the complete procedural status of Artesian PA's *pending* application before the PUC. Appellees assert Artesian PA filed an application with the PUC in March 2016 for regulatory

12

approval to transfer (via assignment agreements) the lease and easement rights relating to the well from Artesian PA's parent, Artesian Resources, to itself. R.R. at 99a-100a. Appellees contend PUC approval of such assignment agreements is required by Chapter 21 of the Public Utility Code, 66 Pa. C.S. §§2101-2107, which addresses affiliated interest transfers. Appellees maintain the Township incorrectly claims the PUC *rejected* Artesian PA's application, and the *PUC* directed Artesian PA to refile an application pursuant to Section 1102 of the Public Utility Code, 66 Pa. C.S. §1102.

To the contrary, Appellees argue, the PUC did not reject Artesian PA's affiliated interest application to assign easement agreements from Artesian Resources to Artesian PA. Rather, they assert, it was PUC Staff (Staff) that issued the dismissal letter the Township references, and Artesian PA promptly appealed that administrative action.

Appellees contend that on December 7, 2017 (after the trial in this suit occurred), the PUC ruled on Artesian PA's appeal of Staff's dismissal. By granting in part and denying in part Artesian PA's appeal, Appellees maintain, the PUC rescinded Staff's letter that purported to dismiss Artesian PA's affiliated interest application, and ruled that the application would proceed to conclusion. R.R. at 746a. Appellees argue the PUC further directed Artesian PA to submit supplemental information through which the PUC could assess the application under Section 1102(a)(3) of the Public Utility Code, 66 Pa. C.S. §1102(a)(3), which Appellees claim, Artesian PA did. R.R. at 747a.

Appellees assert the Township has actual knowledge that its statements that the PUC *rejected* Artesian PA's assignment application are inaccurate because the Township later intervened in the PUC proceeding. Appellees contend that on April 13, 2018 (more than two weeks before the Township filed its brief here), the Township publicly filed a prehearing memorandum, see Appellees' Br., App. A, in which it argued the PUC should deny Artesian PA's request to transfer the easement agreements from Artesian Resources to Artesian PA. Appellees maintain the Township would not ask the PUC to reject Artesian PA's application if the PUC had already rejected that request, as the Township incorrectly claims.

Regardless, Appellees argue, Staff's basis for attempting to dismiss Artesian PA's affiliated interest application had nothing to do with service territory as the Township incorrectly claims. Rather, they assert, the PUC concluded the lease and easement rights were interests in real property that are used or useful in public service and of sufficient value to fall within the ambit of Section 1102 of the Public Utility Code, 66 Pa. C.S. §1102, which requires utilities to obtain a CPC before they may own certain assets. As with the PUC granting Artesian PA a CPC in 2002 to own and operate, among other things, a water main outside its service area, Appellees contend, the fact that the PUC is willing to assess Artesian PA's application to own the easement rights, even though Artesian PA will not have a service territory that directly abuts the well, proves Artesian PA's public utility status applies throughout the Commonwealth and not just in its certificated service area as the Township erroneously claims.

14

**B. Analysis**

Upon review, we are concerned that primary jurisdiction over Artesian PA's application seeking approval of the affiliated interest agreements lies with the PUC, and that a court of original jurisdiction should await the PUC's decision on that application before addressing the remaining issues raised by the parties.

"[P]rimary jurisdiction" is a "judicially created doctrine that allows courts to make a workable allocation of business between themselves and agencies responsible for the regulation of certain industries, and arises where the original jurisdiction of the court is being invoked to decide the merits of the controversy." Bean v. Dep't of State, State Bd. of Funeral Dirs., 855 A.2d 148, 152 (Pa. Cmwlth. 2004) (en banc). Rather than exercising its own jurisdiction, the court declines jurisdiction because it is proper to defer to the administrative agency's jurisdiction. Id. "Primary jurisdiction is exclusive jurisdiction because the agency has jurisdiction over the cause of action to which a decision of the court is relevant, and the jurisdiction of the court will extend to the remaining issues and the relief to be granted." Id. (citation omitted).

Thus, "the doctrine of primary jurisdiction permits the bifurcation of a plaintiff's claim, whereby a [court], faced with a claim requiring the resolution of an issue that is within the expertise of an administrative agency, will first cede the analysis of the issue or issues to that agency." Erie Ins. Exchange ex rel. Sullivan v. Pa. Ins. Dep't, 133 A.3d 102, 107 (Pa. Cmwlth. 2016) (en banc) (quoting Pettko v. Pa. Am. Water Co., 39 A.3d 473, 479 (Pa. Cmwlth. 2011)). "Once the agency resolves the particular issue or issues over which it has primary jurisdiction, the

15

[court] may proceed, if necessary, to apply the agency's decision to the dispute remaining before the [court]." Id.

In Bean, this Court further explained:

Although the primary jurisdiction doctrine was originally a federal doctrine that was established by the United States Supreme Court in Texas [& Pacific Railway] v. Abilene Cotton Oil Co., [204 U.S. 426, (1907)], our Supreme Court adopted it in Weston v. Reading Co., [282 A.2d 714 (Pa. 1971)], and further explained it in Elkin v. Bell Telephone of [Pennsylvania], [420 A.2d 123, 371-376 (Pa. 1980)], as follows:

The principles of the doctrine of primary jurisdiction are well settled. The United States Supreme Court '… recognized early in the development of administrative agencies that coordination between traditional judicial machinery and these agencies was necessary if consistent and coherent policy were to emerge. The doctrine of primary jurisdiction has become one of the key judicial switches through which this current has passed.' The doctrine '… requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.' (Citations omitted.)

Our Supreme Court went on to explain its effect, stating:

It is equally important to realize what the doctrine is not—it is not simply a polite gesture of deference to the agency seeking an advisory opinion wherein the court is free to ignore the agency's determination. Rather, once the court properly refers a matter or a specific issue to the agency, that agency's determination is binding upon the court and the parties (subject, of course, to appellate

16

review through normal channels), and is not subject to collateral attack in the pending court proceeding. 'The common law doctrine of res judicata, including the subsidiary doctrine of collateral estoppel, is designed to prevent the relitigation by the same parties of the same claim or issues.' K.C. Davis, Administrative Law, § 181.10 (1972). Once the administrative tribunal has determined the issues within its jurisdiction, then the temporarily suspended civil litigation may continue, guided in scope and direction by the nature and outcome of the agency determination.

Feingold v. Bell of [Pa., 383 A.2d 791, 801 (Pa. 1977)] (Pomeroy, J., dissenting).

In Poorbaugh v. Pennsylvania Public Utility Commission, 666 A.2d 744 (Pa. Cmwlth. 1995), [appeal denied, 678 A.2d 367 (Pa. 1996)], we further explained the doctrine as follows:

Essentially, the doctrine creates a workable relationship between the courts and administrative agencies wherein, in appropriate circumstances, the courts can have the benefit of the agency's view on issues within the agency's competence. (Citations omitted.)

The doctrine of primary jurisdiction requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme. (Citations omitted.) Our Supreme Court stated in Elkin that the doctrine serves several purposes, chief of which are the benefits to be derived by making use of the agency's special experience and expertise in complex areas with which judges and injuries have little familiarity. Id. Another important consideration is the need to promote consistency and uniformity in certain areas of administrative policy. [Id. at 376]. Once the administrative tribunal has determined the issues within its jurisdiction, then the temporarily

17

> suspended civil litigation may continue, guided in scope and direction by the nature and outcome of the agency determination. Elkin, [420 A.2d at 377].
>
> Id., 666 A.2d at 749. Therefore, when primary jurisdiction is conferred on an administrative agency, usually the following elements are present:
>
> > 1. The industry is a heavily regulated industry;
> >
> > 2. To resolve the matter at issue requires a special expertise that resides within the agency;
> >
> > 3. The issue is fact specific and ordinarily requires voluminous and conflicting testimony to resolve it;
> >
> > 4. The administrative agency was created to address and focus on problems similar to the one for which its primary jurisdiction is being advanced;
> >
> > 5. It has jurisdiction to issue the relief requested;
> >
> > 6. Overriding all other factors, the regulatory system will work better if the administrative agency hears the matter rather than the courts.

Bean, 855 A.2d at 152-53. Nevertheless, the doctrine of primary jurisdiction must be used sparingly and under the appropriate circumstances. Erie Ins.

Here, primary jurisdiction over approval of the affiliated interest agreements, which are assignment agreements between Artesian PA and its parent affiliate, Artesian Resources, lies with the PUC. Indeed, by statute, affiliated interest agreements require PUC approval in order to be valid or effective. 66 Pa. C.S. §2102. Clearly, decisions regarding approval of affiliated interest agreements require special expertise that resides within the PUC. Id. Further, the issue of whether the affiliated interest agreements should be approved is fact specific and

18

requires extensive testimony to resolve. Indeed, ongoing litigation as to the propriety of the affiliated interest agreements is currently proceeding before the PUC.

To that end, contrary to the Township's arguments, in its December 7, 2017 opinion and order, the PUC did not reject Artesian PA's application for approval of its affiliated interest agreements, which would assign the 2001 and 2002 Easements from Artesian Resources to Artesian PA. Rather, the PUC "referred [Artesian PA's application] to the Bureau of Technical Utility Services, Water/Wastewater Division, for continued review, consideration and preparation of an [o]rder disposing of the merits of the [a]pplication under the legal standards of Chapter 21 of the [Public Utility] Code, [66 Pa. C.S. §§2101-2107] and Section 1102(a)(3) of the [Public Utility] Code, 66 Pa. C.S. [§1102(a)(3),] consistent with this [o]pinion and [o]rder." R.R. at 746a. It is apparent that Artesian PA's application for approval of its affiliated interest agreements is still pending before the PUC. See Appellees' Br., App. A (Prehearing Mem. of New Garden Township, Pennsylvania, filed with the PUC, 4/13/18, at PUC Dkt. Nos. G-2016-2544455 & A-2017-2639994).

Further, the PUC has jurisdiction to grant the requested relief, *i.e.*, approval of the affiliated interest agreements. 66 Pa. C.S. §2102. Clearly, the regulatory system will function more effectively if the PUC, rather than the courts, hears this matter as required by statute.

In short, a decision as to whether to approve the affiliated interest agreements falls expressly within the PUC's jurisdiction and invites the PUC's special competency. Thus, we question if the trial court should defer to the PUC on the issue of whether the affiliated interest agreements should be approved, thereby resulting in a CPC. As a result, we vacate and remand to the trial court to consider in the first instance whether to invoke the doctrine of primary jurisdiction. If it decides to do so, it should not resolve the remaining issues raised by the parties at this time. Instead, the trial court, with notice to the PUC, should stay the current proceeding while it awaits the PUC's decision on Artesian PA's application for approval of its affiliated interest agreements. See 36 STANDARD PENNSYLVANIA PRACTICE 2d §166:384 (2013) (when invoking the doctrine of primary jurisdiction and referring a particular issue to an agency, "[t]he court will stay the action pending before it, particularly when an issue is already before the agency."). After the PUC acts, the trial court may reinstate its prior orders or take whatever action it deems appropriate under the circumstances.


ROBERT SIMPSON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

New Garden Township,                      :
                            Appellant              :
                                           :
                    v.              :      261 C.D. 2018
                                           :

Artesian Resources Corporation, Inc.,     :
Artesian Water Pennsylvania, Inc.,        :
Artesian Water Company, Inc., and         :
Charles L. Wilkenson Broad Run            :
Valley, Inc.                               :

## **O R D E R**

        **AND NOW**, this 14th day of May, 2019, for the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas of Chester County disposing of the declaratory judgment action initiated by New Garden Township is **VACATED,** and the matter is **REMANDED** for proceedings consistent with the foregoing opinion.  Jurisdiction is relinquished.


                                         _____
                                         ROBERT SIMPSON, Judge